**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CENTER FOR COMPETITIVE POLITICS, *Plaintiff-Appellant*, | No. 14-15978 |
| v. | D.C. No. 2:14-cv-00636-MCE-DAD |
| KAMALA D. HARRIS, in her official capacity as Attorney General of the State of California, *Defendant-Appellee*. | OPINION |

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., Chief District Judge, Presiding

Argued and Submitted
December 8, 2014—San Francisco California

Filed May 1, 2015

Before: A. Wallace Tashima and Richard A. Paez, Circuit
Judges, and Gordon J. Quist, Senior District Judge.[*]

Opinion by Judge Paez

---

[*] The Honorable Gordon J. Quist, Senior District Judge for the U.S. District Court for the Western District of Michigan, sitting by designation.

# SUMMARY[**]

## Civil Rights

The panel affirmed the district court's denial of a preliminary injunction in an action brought by the Center for Competitive Politics under 42 U.S.C. § 1983 seeking to enjoin the California Attorney General from requiring it to disclose the names and contributions of the Center's "significant donors" on Internal Revenue Form 990 Schedule B, which the Center must file with the state in order to maintain its registered status with the state's Registry of Charitable Trusts.

The panel first rejected the Center's contention that the disclosure requirement was, in and of itself, injurious to the Center and its supporters' exercise of their First Amendment rights to freedom of association. The panel held that the chilling *risk* inherent in compelled disclosure triggered exacting scrutiny. Under the exacting scrutiny's balancing test, the strength of the governmental interest must reflect the seriousness of the *actual* burden on First Amendment right. The panel held that the Center had not shown any "actual burden" to itself or to its supporters. The panel determined that the Center did not claim or produce evidence to suggest that its significant donors would experience threats, harassment, or other potentially chilling conduct as a result of the Attorney General's disclosure requirement. On the other side of the scale, the panel held that the Attorney General has a compelling interest in enforcing the laws of California and

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that the disclosure requirement bore a "substantial relation" to the "sufficiently important" government interest of law enforcement.

The panel also rejected the Center's contention that the disclosure requirement was preempted because Congress intended to protect the privacy of the donor information of non-profit organizations from all public disclosure when it added 26 U.S.C. § 6104, part of the Pension Protection Act of 2006. The panel held that Section 6104 does not so clearly manifest the purpose of Congress that the panel could infer from it that Congress intended to bar state attorneys general from requesting the information contained in Form 990, Schedule B.

## COUNSEL

Allen J. Dickerson (argued), Center for Competitive Politics, Alexandria, Virginia; Alan Gura, Gura & Possessky, PLLC, Alexandria, Virginia for Plaintiff-Appellant.

Kamala Harris, California Attorney General, Alexandra Robert Gordon (argued), Deputy Attorney General, San Francisco, California for Defendant-Appellee.

Joseph Vanderhulst, ActRight Legal Foundation, Plainfield, Indiana, for Amici Curiae National Organization for Marriage, Inc., and National Organization for Marriage Educational Trust Fund.

Bradley Benbrook and Stephen Duvernay, Benbrook Law Group, PC, Sacramento, California, for Amicus Curiae Charles M. Watkins.

**OPINION**

PAEZ, Circuit Judge:

In order to solicit tax deductible contributions in California, a non-profit corporation or other organization must be registered with the state's Registry of Charitable Trusts. Cal. Gov. Code § 12585. To maintain its registered status, an entity must file an annual report with the California Attorney General's Office, and must include IRS Form 990 Schedule B. The Internal Revenue Service (IRS) requires non-profit educational or charitable organizations registered under 24 U.S.C. § 501(c)(3) to disclose the names and contributions of their "significant donors" (donors who have contributed more than $5,000 in a single year) on Form 990 Schedule B. The Center for Competitive Politics (CCP), a non-profit educational organization under § 501(c)(3), brings this lawsuit under 42 U.S.C. § 1983, seeking to enjoin the Attorney General from requiring it to file an unredacted Form 990 Schedule B. CCP argues that disclosure of its major donors' names violates the right of free association guaranteed to CCP and its supporters by the First Amendment.

CCP appeals the district court's denial of CCP's motion for a preliminary injunction to prevent the Attorney General from enforcing the disclosure requirement. We have jurisdiction under 28 U.S.C. § 1292(a)(1), and we affirm.

# I.

## A.

CCP is a Virginia non-profit corporation, recognized by the IRS as an educational organization under § 501(c)(3). CCP's "mission is to promote and defend the First Amendment rights of free political speech, assembly, association, and petition through research, education, and strategic litigation." CCP supports itself through financial donations from contributors across the United States, including California. CCP argues that the disclosure requirement infringes its and its supporters' First Amendment right to freedom of association. CCP also argues that federal law preempts California's disclosure requirement.

Defendant Kamala Harris, the Attorney General of California, is the chief law enforcement officer of the State of California. *See* Cal. Const. art. 5, § 13. Furthermore, under the Supervision of Trustees and Fundraisers for Charitable Purposes Act (the Act), Cal. Gov't Code § 12580 et seq., the Attorney General also has primary responsibility to supervise charitable trusts and public benefit corporations incorporated in or conducting business in California, and to protect charitable assets for their intended use. Cal. Gov't Code §§ 12598(a), 12581. The Act requires the Attorney General to maintain a registry of charitable corporations and their trustees and trusts, and authorizes the Attorney General to obtain "whatever information, copies of instruments, reports, and records are needed for the establishment and maintenance of the register." Cal. Gov't Code § 12584.

An organization must maintain membership in the registry in order to solicit funds from California residents.

Cal. Gov't Code § 12585.  The Act requires that corporations file periodic written reports, and requires the Attorney General to promulgate rules and regulations specifying both the filing procedures and the contents of the reports.  Cal. Gov't Code § 12586(b), Cal. Code Regs. tit. 11, § 300 et seq. (2014).  One of the regulations adopted by the Attorney General requires that the periodic written reports include Form 990.[1]  Cal. Code Regs. tit. 11, § 301 (2014).  Although many documents filed in the registry are open to public inspection, *see* Cal. Code Regs. tit. 11, § 310, Form 990 Schedule B is confidential, accessible only to in-house staff and handled separately from non-confidential documents.

The Attorney General argues that there is a compelling law enforcement interest in the disclosure of the names of significant donors.  She argues that such information is necessary to determine whether a charity is actually engaged in a charitable purpose, or is instead violating California law by engaging in self-dealing, improper loans, or other unfair business practices. *See* Cal. Corp. Code §§ 5233, 5236, 5227.  At oral argument, counsel elaborated and provided an example of how the Attorney General uses Form 990 Schedule B in order to enforce these laws: having significant donor information allows the Attorney General to determine when an organization has inflated its revenue by overestimating the value of "in kind" donations.  Knowing the significant donor's identity allows her to determine what

---

[1] California is not alone in requiring charitable organizations to file an unredacted Form 990 Schedule B.  At least Hawaii, Mississippi, and Kentucky share the same requirement.  Haw. Rev. Stat. Ann. § 467B-6.5 (2014); Ky. Rev. Stat. Ann. §§ 367.650-.670 (2014); Miss. Code Ann. § 79-11-507 (2014).  According to Amicus Charles Watkins, Florida and New York also require unredacted versions of Form 990 Schedule B.

the "in kind" donation actually was, as well as its real value. Thus, having the donor's information immediately available allows her to identify suspicious behavior. She also argues that requiring unredacted versions of Form 990 Schedule B increases her investigative efficiency and obviates the need for expensive and burdensome audits.

**B.**

CCP has been a member of the registry since 2008. Since its initial registration, CCP has filed redacted versions of Form 990 Schedule B, omitting the names and addresses of its donors. In 2014, for the first time, the Attorney General required CCP to submit an unredacted Form 990 Schedule B. In response to this demand, CCP filed suit, alleging that the Attorney General's requirement that CCP file an unredacted Form 990 Schedule B amounted to a compelled disclosure of its supporters' identities that infringed CCP's and its supporters' First Amendment rights to freedom of association. CCP also alleged that a section of the Internal Revenue Code, 26 U.S.C. § 6104, which restricts disclosure of the information contained in Schedule B, preempted the Attorney General's requirement.

As noted above, the district court denied CCP's motion for a preliminary injunction, ruling that CCP was unlikely to succeed on the merits of either of its claims, and that, therefore, CCP could not show that it would suffer irreparable harm or that the public interest weighed in favor of granting the relief it requested. *Ctr. for Competitive Politics v. Harris*, No. 2:14–cv–00636–MCE–DAD, 2014 WL 2002244 (E.D. Cal. May 14, 2014).

## II.

We review a district court's ruling on a motion for preliminary injunctive relief for abuse of discretion. *See FTC v. Enforma Natural Prods.*, 362 F.3d 1204, 1211-12 (9th Cir. 2004); *Harris v. Bd. of Supervisors, L.A. Cnty.*, 366 F.3d 754, 760 (9th Cir. 2004). We review findings of fact for clear error and conclusions of law de novo. *See Indep. Living Ctr. of S. Cal., Inc. v. Shewry*, 543 F.3d 1050, 1055 (9th Cir. 2008). Our review of a denial of preliminary injunctive relief must be "limited and deferential." *Harris*, 366 F.3d at 760.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). Thus, CCP bears the heavy burden of making a "clear showing" that it was entitled to a preliminary injunction.

We apply exacting scrutiny in the context of First Amendment challenges to disclosure requirements. "Disclaimer and disclosure requirements may burden the ability to speak, but they . . . do not prevent anyone from speaking." *Citizens United v. FEC*, 558 U.S. 310, 366 (2010) (internal citations and quotation marks omitted). Therefore, courts have "subjected these requirements to 'exacting scrutiny,' which requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." *Id.* at 366–67 (quoting *Buckley v.*

*Valeo*, 424 U.S. 1 (1976)).[2] Exacting scrutiny encompasses a balancing test. In order for a government action to survive exacting scrutiny, "the strength of the governmental interest must reflect the seriousness of the *actual* burden on First Amendment rights." *John Doe No. 1*, 561 U.S. at 196 (quoting *Davis v. FEC*, 554 U.S. 724, 744 (2008)) (emphasis added).

### III.

### A.

CCP argues that the Attorney General's disclosure requirement is, in and of itself, injurious to CCP's and its supporters' exercise of their First Amendment rights to freedom of association. CCP further argues that the Attorney General must have a compelling interest in the disclosure requirement, and that the requirement must be narrowly tailored in order to justify the First Amendment harm it causes. This is a novel theory, but it is not supported by our case law or by Supreme Court precedent.

In arguing that the disclosure requirement alone constitutes significant First Amendment injury, CCP relies

---

[2] Although most of the cases in which we and the Supreme Court have applied exacting scrutiny arise in the electoral context, *see John Doe No. 1 v. Reed*, 561 U.S. 186, 196 (2010) (referring to long line of such precedent), we have also applied the exacting scrutiny standard in the context of a licensing regime. *See Acorn Invs., Inc. v. City of Seattle*, 887 F.2d 219 (9th Cir. 1989). Moreover, the foundational compelled disclosure case, *NAACP v. Ala. ex. rel. Patterson*, arose outside the electoral context. In that case, the NAACP challenged a discovery order (arising out of a contempt proceeding) that would have forced it to reveal its membership lists. 357 U.S. 449 (1958).

heavily on dicta in *Buckley v. Valeo*, in which the Supreme Court stated that "compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment." 424 U.S. at 64. Notably, the Court said "can" and not "always does." Furthermore, in making that statement, the Court cited a series of Civil Rights Era as-applied cases in which the NAACP challenged compelled disclosure of its members' identities at a time when many NAACP members experienced violence or serious threats of violence based on their membership in that organization.[3] *Id.* The Court went on to explain that "[t]he strict test established by *NAACP v. Alabama* is necessary because compelled disclosure has the *potential* for substantially infringing the exercise of First

---

[3] CCP also cites extensively to these cases; however, because all of them are as-applied challenges involving the NAACP (which had demonstrated that disclosure would harm its members), these cases are all inapposite: *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539 (1963) (holding that the NAACP was not required to comply with a subpoena and disclose membership lists to a Florida state legislative committee investigating communist activity); *NAACP v. Button*, 371 U.S. 415 (1963) (upholding NAACP's challenge to a Virginia statute barring the improper solicitation of legal business, which the state had attempted to use to prohibit the organization's operation); *Shelton v. Tucker*, 364 U.S. 479 (1960) (striking down on First Amendment grounds an Arkansas statute requiring public school teachers to disclose all organizations to which they had belonged or contributed in the past five years); *Bates v. Little Rock*, 361 U.S. 516 (1960) (invalidating an Arkansas local ordinance requiring disclosure of membership lists on First Amendment grounds as applied to the NAACP, given the substantial record of the threats and harassment that members of the organization would experience as a result of disclosure); *NAACP v. Alabama*, 357 U.S. 449 (1958) (holding that the NAACP was not required to comply with a discovery order requiring disclosure of its membership lists). In *Shelton*, while the NAACP was not a party, the primary plaintiff, Shelton, was a member of the NAACP. 364 U.S. at 484.

Amendment rights." *Id.* at 66 (emphasis added). The most logical conclusion to draw from these statements and their context is that compelled disclosure, without any additional harmful *state action*, can infringe First Amendment rights when that disclosure leads to private discrimination against those whose identities may be disclosed.

Of course, compelled disclosure can also infringe First Amendment rights when the disclosure requirement is itself a form of harassment intended to chill protected expression. Such was the case in *Acorn Investments, Inc. v. City of Seattle*, another opinion upon which CCP bases its theory that compelled disclosure alone constitutes First Amendment injury. In *Acorn*, the plaintiff brought a First Amendment challenge to Seattle's licensing fee scheme and its concomitant requirement that panoram businesses disclose the names and addresses of their shareholders. 887 F.2d at 220. Panorams, or "peep shows," were a form of adult entertainment business strongly associated with criminal activity. *Id.* at 222–24. Seattle's disclosure requirement exclusively targeted the shareholders of panoram businesses, and the only justification that the city advanced was "accountability." *Id.* at 226. The plaintiff argued that the disclosure requirement was intended to chill its protected expression, and, given the absence of any reasonable justification for the ordinance, we held that it violated the First Amendment. *Id.* In so holding, we found especially instructive and cited as indistinguishable a Seventh Circuit case, *Genusa v. City of Peoria*, 619 F.2d 1203 (7th Cir. 1980), in which "the court concluded that there could be 'no purpose other than harassment in requiring the individual . . . stockholders to file separate statements or applications.'" *Id.* (quoting *Genusa*, 619 F.3d at 1217). However, here, there is no indication in the record that the Attorney General's

disclosure requirement was adopted or is enforced in order to harass members of the registry in general or CCP in particular. Thus, the concern animating the holdings of *Acorn* and *Genusa* does not apply here.

CCP is correct that the chilling *risk* inherent in compelled disclosure triggers exacting scrutiny—"the strict test established by *NAACP v. Alabama*," *Buckley*, 424 U.S. at 66—and that, presented with a challenge to a disclosure requirement, we must examine and balance the plaintiff's First Amendment injury against the government's interest. However, CCP is incorrect when it argues that the compelled disclosure *itself* constitutes such an injury, and when it suggests that we must weigh that injury when applying exacting scrutiny. Instead, the Supreme Court has made it clear that we must balance the "seriousness of the *actual* burden" on a plaintiff's First Amendment rights. *John Doe No. 1*, 561 U.S. at 196 (emphasis added); *Chula Vista Citizens for Jobs & Fair Competition v. Norris*, No. 12–55726, — F.3d —, 2015 WL 1499334, at *13 (9th Cir. Apr. 3, 2015) (en banc) (applying this standard in evaluating a First Amendment challenge to a disclosure requirement under exacting scrutiny). Here, CCP has not shown any "actual burden" on its freedom of association.

## B.

CCP's creative formulation, however, does affect the scope of its challenge. In *John Doe No. 1*, signatories of a referendum petition challenged the Washington Public Records Act (PRA),[4] which permitted public inspection of such petitions. 561 U.S. at 191. The plaintiffs sought to

---

[4] Wash. Rev. Code § 42.56001 et seq.

prevent the disclosure of the names of those who had signed a referendum petition to challenge and put to a popular vote a Washington state law that had extended benefits to same-sex couples. *Id.* The complaint charged both that the PRA was unconstitutional as to the referendum petition to overturn the same-sex benefits law and as to referendum petitions generally. *Id.* at 194. Thus, there was some dispute as to whether their challenge was best construed as an as-applied or as a facial challenge. *Id.* The Court explained that "[t]he label is not what matters." *Id.* Rather, because the "plaintiffs' claim and the relief that would follow . . . reach[ed] beyond the particular circumstances of these plaintiffs," they were required to "satisfy our standards for a facial challenge to the extent of that reach." *Id.*

In formulating its claim such that the disclosure requirement itself is the source of its alleged First Amendment injury, CCP's claim "is not limited to [its] particular case, but challenges application of the law more broadly to all [registry submissions]." *Id.* Were we to hold that the disclosure requirement at issue here itself infringes CCP's First Amendment rights, then it would necessarily also infringe the rights of all organizations subject to it. Even though CCP only seeks to enjoin the Attorney General from enforcing the disclosure requirement against itself, the Attorney General would be hard-pressed to continue to enforce an unconstitutional requirement against any other member of the registry.[5] Therefore, because "the relief that would follow . . . reach[es] beyond the particular circumstances of th[is] plaintif[f,] [CCP's claim] must . . . satisfy our standards for a facial challenge to the extent of

---

[5] CCP conceded at oral argument that its challenge is best understood as a facial challenge.

that reach." *Id.* (citing *United States v. Stevens*, 559 U.S. 460, 472–73 (2010)).

"Which standard applies in a typical [facial challenge] is a matter of dispute that we need not and do not address . . . ." *Stevens*, 559 U.S. at 472. The Supreme Court has at different times required plaintiffs bringing facial challenges to show "that no set of circumstances exists under which [the challenged law] would be valid," *United States v. Salerno*, 481 U.S. 739, 745 (1987), or that it lacks any "plainly legitimate sweep," *Washington v. Glucksberg*, 521 U.S. 702, 740, n. 7 (1997) (Stevens, J., concurring) (internal quotation marks omitted). Alternatively, in the First Amendment context, the Court has sometimes employed a different standard to evaluate facial overbreadth challenges, "whereby a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Stevens*, 559 U.S. at 473 (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449, n. 6 (2008)).

The least demanding of these standards is that of the First Amendment facial overbreadth challenge. Because CCP cannot show that the regulation fails exacting scrutiny in a "substantial" number of cases, "judged in relation to [the disclosure requirement's] plainly legitimate sweep," we need not decide whether it could meet the more demanding standards of *Salerno* and *Glucksberg*.

### C.

Although not for the reasons that CCP posits, *Buckley v. Valeo* is instructive for assessing CCP's facial challenge. In *Buckley*, the plaintiffs challenged the disclosure requirements

of the Federal Election Campaign Act[6] as overbroad on two grounds. 424 U.S. at 60–61. The first ground was that the disclosure requirement applied to minor party members, such as members of the Socialist Labor Party, who might face harassment or threats as a result of the disclosure of their names. *Id.* The plaintiffs sought a blanket exemption for minor parties. The second ground of the *Buckley* plaintiffs' challenge was that the thresholds triggering disclosure were too low, because the requirement attached to any donation of $100 or more (with additional reporting requirements to a Committee, though not to the public, for donations over $10). *Id.*

After applying exacting scrutiny, the *Buckley* Court rejected the plaintiffs' minor party challenge because "no appellant [had] tendered record evidence of the sort proffered in *NAACP v. Alabama*," and so had failed to make the "[r]equisite [f]actual [s]howing." *Id.* at 69–71. Where the record evidence constituted "[a]t best . . . the testimony of several minor-party officials that one or two persons refused to make contributions because of the possibility of disclosure . . . the substantial public interest in disclosure identified by the legislative history of this Act outweighs the harm generally alleged." *Id.* at 71–72. The Court, however, left open the possibility that if a minor party plaintiff could show "a reasonable probability that the compelled disclosure of a party's contributors' names will subject them to threats, harassment, or reprisals from either Government officials or private parties," then it could succeed on an as-applied challenge. *Id.* at 74. Thus, even where, unlike here, the plaintiffs adduced some evidence that their participation

---

[6] Then codified at 2 U.S.C. § 431 et seq., now at 52 U.S.C. § 30101 et seq.

would be chilled, the *Buckley* Court rejected a facial challenge.

Further undermining CCP's argument, the *Buckley* Court also rejected the plaintiffs' "contention, based on alleged overbreadth, . . . that the monetary thresholds in the record-keeping and reporting provisions lack[ed] a substantial nexus with the claimed governmental interests, for the amounts involved [were] too low." *Id.* at 82. The Court noted that they were "indeed low," but concluded that it "[could not] say, on this bare record, that the limits designated [were] wholly without rationality," because they "serve[d] informational functions," and "facilitate[d] enforcement" of the contribution limits and disclosure requirements. *Id.* at 83. Thus, the *Buckley* Court rejected the plaintiffs' overbreadth challenge both with respect to minor parties and the donation thresholds.

Engaging in the same balancing that the *Buckley* Court undertook, we examine the claims and interests the parties assert here. In contrast to the *Buckley* plaintiffs, CCP does not claim and produces no evidence to suggest that their significant donors would experience threats, harassment, or other potentially chilling conduct as a result of the Attorney General's disclosure requirement.[7] CCP has not demonstrated any "actual burden," *John Doe No. 1*, 561 U.S. at 196, on its or its supporters' First Amendment rights. As

---

[7] The minor parties in *Buckley* feared harassment because they advocated unpopular positions. CCP has not alleged that its supporters would face a similar backlash. However, amicus National Organization for Marriage contends that, like the minor party donors and members in *Buckley*, its significant donors could face retaliatory action if their names were ever released to the public.

discussed *supra*, contrary to CCP's contentions, no case has ever held or implied that a disclosure requirement in and of itself constitutes First Amendment injury.[8]

Furthermore, unlike in *John Doe No. 1* or in other cases requiring the disclosure of the names of petition signatories, in this case, the disclosure would not be public. The Attorney General keeps Form 990 Schedule B confidential. Although it is certainly true that non-public disclosures can still chill protected activity where a plaintiff fears the reprisals of a government entity, CCP has not alleged any such fear here. CCP instead argues that the Attorney General's systems for preserving confidentiality are not secure, and that its significant donors' names might be inadvertently accessed or released. Such arguments are speculative, and do not constitute evidence that would support CCP's claim that disclosing its donors to the Attorney General for her

---

[8] Contrary to CCP's contention, *Talley v. California*, 362 U.S. 60 (1960), is not such a case. In *Talley*, the Supreme Court struck down a law that outlawed the distribution of hand-bills that did not identify their authors. *Id.* at 64. In so doing, the Court did not explicitly apply exacting scrutiny, though it cited *NAACP v. Alabama* and *Bates*. *Id.* at 65. The basis for the Court's holding was the historic, important role that anonymous pamphleteering has had in furthering democratic ideals. *Id.* at 64 ("There can be no doubt that such an identification requirement would tend to restrict freedom to distribute information and thereby freedom of expression . . . Anonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind."). Thus, in that case, the Court was certain of the First Amendment harm that the ordinance imposed.

confidential use would chill its donors' participation.[9]  *See United States v. Harriss*, 347 U.S. 612, 626 (1954).[10]

On the other side of the scale, as CCP concedes, the Attorney General has a compelling interest in enforcing the laws of California.  CCP does not contest that the Attorney General has the power to require disclosure of significant donor information as a part of her general subpoena power.  Thus, the disclosure regulation has a "plainly legitimate

---

[9] CCP also argues that only an informal policy prevents the Attorney General from publishing the forms and requires her to take appropriate measures to ensure the forms stay confidential.  However, where a record is exempt from public disclosure under federal law, as is Form 990 Schedule B, it is also exempt from public inspection under the California Public Records Act.  Cal. Gov't Code § 6254(k) (2015).  Thus, it appears doubtful that the Attorney General would ever be required to make Form 990 Schedule B publicly available.  Moreover, while the exemption under § 6254(k) is permissive, and not mandatory, *Marken v. Santa Monica Malibu Unified Sch. Dist.*, 136 Cal. Rptr. 3d 395, 405 (Ct. App. 2012), where public disclosure is *prohibited* under state or federal law, the responsible California agency is also prohibited from public disclosure. *See* Cal. Gov't Code § 6254(f) ("This section shall not prevent any agency from opening its records concerning the administration of the agency to public inspection, unless disclosure is otherwise prohibited by law.").  As public disclosure (distinct from disclosure to the Attorney General) of significant donor information is not authorized by federal law, it is likely not authorized by California law, either.  However, because CCP has not provided any evidence that even public disclosure would chill the First Amendment activities of its significant donors, the potential for a future change in the Attorney General's disclosure policy does not aid CCP in making its facial challenge.

[10] In *Harriss*, the Supreme Court rejected a First Amendment challenge to an act imposing disclosure requirements on lobbyists, where plaintiffs presented "[h]ypothetical borderline situations" where speech might be chilled, because "[t]he hazard of such restraint is too remote" to require striking down an otherwise valid statute.

sweep." *Stevens*, 559 U.S. at 473. CCP argues instead that the disclosure requirement does not bear a substantial enough relationship to the interest that the Attorney General has asserted in the disclosure, and that the Attorney General should be permitted only to demand the names of significant donors if she issues a subpoena. CCP's argument that the disclosure requirement exceeds the scope of the Attorney General's subpoena power is similar to the *Buckley* plaintiffs' argument that the low monetary thresholds exceeded the scope of Congress's legitimate regulation.

Like the *Buckley* Court, we reject this argument, especially in the context of a facial challenge. The Attorney General has provided justifications for employing a disclosure requirement instead of issuing subpoenas. She argues that having immediate access to Form 990 Schedule B increases her investigative efficiency, and that reviewing significant donor information can flag suspicious activity. The reasons that the Attorney General has asserted for the disclosure requirement, unlike those the City of Seattle put forth in *Acorn*, are not "wholly without rationality." *See Buckley*, 424 U.S. at 83. Faced with the Attorney General's "unrebutted arguments that only modest burdens attend the disclosure of a typical [Form 990 Schedule B]," we reject CCP's "broad challenge," *John Doe No. 1*, 561 U.S. at 201. We conclude that the disclosure requirement bears a "substantial relation" to a "sufficiently important" government interest. *See Citizens United*, 558 U.S. at 366 (internal citations omitted).

However, as the Supreme Court did in *Buckley* and *John Doe No. 1*, we leave open the possibility that CCP could show "a reasonable probability that the compelled disclosure of [its] contributors' names will subject them to threats,

harassment, or reprisals from either Government officials or private parties" that would warrant relief on an as-applied challenge. *See McConnell v. FEC*, 540 U.S. 93, 199 (2003) (rejecting a facial challenge, but leaving open the possibility of a future as-applied challenge).

In sum, CCP's First Amendment facial challenge to the Attorney General's disclosure requirement fails exacting scrutiny.

## IV.

CCP also contends that federal tax law preempts the Attorney General's disclosure requirement. CCP argues that Congress intended to protect the privacy of the donor information of non-profit organizations from all public disclosure when it added 26 U.S.C. § 6104, part of the Pension Protection Act of 2006, and that, therefore, permitting state attorneys general to require this information from non-profit organizations registered under § 501(c)(3) would conflict with that purpose. CCP's argument is unavailing.

Federal law is supreme and Congress can certainly preempt a state's authority. However, principles of federalism dictate that we employ a strong presumption against preemption. *Arizona v. United States*, 132 S. Ct. 2492, 2500 (2012). Therefore, federal law will only preempt state law if such preemption was "the clear and manifest purpose of Congress." *Id*. at 2501. Congress can express that intent explicitly, or the intent can be inferred when a state law irreconcilably conflicts with a federal law. *Id.* Alternatively, "the intent to displace state law altogether can be inferred" when the federal government has established a legislative

framework "so pervasive that Congress left no room for states to supplement it." *Id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). A state law can be in conflict with a federal law when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.*; *see also Barnett Bank of Marion Cnty. N.A. v. Nelson*, 517 U.S. 25, 31 (1996) (holding that such an obstacle can arise even where the two laws are not directly in conflict).

CCP argues that 26 U.S.C. § 6104(c)(3) expressly preempts the Attorney General's disclosure requirement. That section provides:

> Upon written request by an appropriate State officer, the Secretary may make available for inspection or disclosure returns and return information of any organization described in section 501 (c) (*other than organizations described in paragraph (1) or (3) thereof*) for the purpose of, and only to the extent necessary in, the administration of State laws regulating the solicitation or administration of the charitable funds or charitable assets of such organizations.

(emphasis added). CCP reads this language to ban the Secretary from sharing the tax information of § 501(c)(3) organizations with state attorneys general. The language is better construed as a limited grant of authority than as a prohibition. However, even if CCP's reading were accurate, a statute restricting the disclosures that the Commissioner of the IRS may make does not expressly preempt the authority of state attorneys general to require such disclosures directly

from the non-profit organizations they are tasked with regulating.

CCP further argues that the Attorney General's disclosure requirement conflicts with the purpose of § 6104, but neither of the two subsections of § 6104 upon which CCP relies can support its argument. Neither subsection indicates that Congress sought to regulate states' access to this information for the purposes of enforcing their laws, or that Congress sought to regulate the actions of any entity other than the IRS. The first subsection allows for the public availability of the tax returns of certain organizations and trusts, but goes on to qualify that "[n]othing in this subsection shall *authorize the Secretary* to disclose the name or address of any contributor to any organization or trust." 26 U.S.C. § 6104(b) (emphasis added). The second subsection lays out disclosure requirements for § 501(c)(3) organizations generally, and then provides an exception to those requirements, such that they "shall not require the disclosure of the name or address of any contributor to the organization." *Id.* § 6104(d)(3)(A).

These subsections may support an argument that Congress sought to regulate the disclosures that the IRS may make, but they do not broadly prohibit other government entities from seeking that information directly from the organization. Nor do they create a pervasive scheme of privacy protections. Rather, these subsections represent exceptions to a general rule of disclosure. Thus, these subsections do not so clearly manifest the purpose of Congress that we could infer from them that Congress intended to bar state attorneys general from requesting the information contained in Form 990 Schedule B from entities like CCP.

The district court relied on our opinion in *Stokwitz v. United States*, 831 F.2d 893 (9th Cir. 1987), in holding that CCP was unlikely to succeed on its preemption argument. In that case, an attorney for the U.S. Navy was charged with misconduct and his personal tax returns were seized. *Id.* at 893. He argued that 26 U.S.C. § 6103, regulating public disclosure of such documents, forbade their use in the proceedings against him. *Id.* at 894. We disagreed: "[c]ontrary to appellant's contention, there is no indication in either the language of section 6103 or its legislative history that Congress intended to enact a general prohibition against public disclosure of tax information." *Id.* at 896. Instead, the legislative history of the section revealed that "Congress's overriding purpose was to curtail loose disclosure practices by the IRS." *Id.* at 894. Here, since nothing in the legislative history of § 6104 suggested that its purpose was in any way different from that of § 6103, the district court concluded that the Attorney General's disclosure requirement was likewise not preempted.

While CCP is correct that Congress added § 6104 thirty years after § 6103, and that, therefore, Congress's intent may have differed, our opinion in *Stokwitz* is nevertheless instructive. The very legislative history to which CCP directs us describes the operation of sections 6103 and 6104 in tandem. *See* Staff of the Joint Committtee on Taxation, 109th Cong., Technical Explanation of H.R. 4, the "Pension Protection Act of 2006" at 327–29 (Comm. Print 2006). Nothing in the legislative history suggests that Congress sought to extend the regulatory scheme it imposed on the IRS with § 6103 to other entities when it added § 6104. Moreover, when two sections operate together, and when Congress clearly sought to regulate the actions of a particular entity with one section, it is not unreasonable to infer that

Congress sought to regulate the same entity with the other. Therefore, *Stokwitz* supports our conclusion that § 6104, like § 6103, is intended to regulate the IRS, and not to ban all means of accessing donor information.

Section 6104 does not so clearly manifest the purpose of Congress that we could infer from it that Congress intended to bar state attorneys general from requesting the information contained in Form 990 Schedule B. *See Arizona*, 132 S.Ct. at 2501. CCP's preemption claim must fail.

**V.**

In order to prevail on a motion for a preliminary injunction, a plaintiff must show a likelihood of success on the merits and that irreparable harm is not only possible, but likely, in the absence of injunctive relief. *Winter*, 555 U.S. at 20. CCP has not shown a likelihood of success on the merits. Because it is not likely that the Attorney General's disclosure requirement injures CCP's First Amendment rights, or that it is preempted by federal law, it is not likely that CCP will suffer irreparable harm from enforcement of the requirement. Thus, CCP cannot meet the standard established by *Winter*.

For the foregoing reasons, the district court's denial of CCP's motion for a preliminary injunction is **AFFIRMED**.