IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

CENTER FOR COMPETITIVE )
POLITICS, )
 )
      Plaintiff-Appellant, )
 )
  v. )   C.A. No. 14-15978
 )
KAMALA D. HARRIS, )
in her official capacity as Attorney General )
of the State of California, )
 )
      Defendant-Appellee. )

---

**UNOPPOSED MOTION TO STAY THE MANDATE AND MOTION FOR PRELIMINARY INJUNCTIVE RELIEF PENDING FILING OF A PETITION FOR A WRIT OF *CERTIORARI***

Pursuant to 28 U.S.C. § 2101(f), Federal Rule of Appellate Procedure 41(d)(2), and Circuit Rule 41-1, Plaintiff-Appellant Center for Competitive Politics ("CCP") moves this Court for an order staying the mandate in this case for 90 days pending its filing of a Petition for Writ of *Certiorari* with the United States Supreme Court. Further, CCP respectfully requests that, for the same purpose, this Court renew the injunction it granted on January 6, 2015 and lifted on May 1, 2015.[1]

---

[1] Counsel for CCP has communicated with counsel for the Attorney General, and have been informed that (1) the Attorney General does not oppose CCP's motion

1

This Court ought to stay the mandate because CCP's *certiorari* petition will present a substantial question to the Supreme Court and there is good cause for a stay. *See* FED. R. APP. 41(d)(2)(A). This Court should simultaneously issue a temporary injunction for the same reasons it did so previously: CCP will suffer irreparable harm absent this Court's protection, and the Supreme Court should be permitted to review this matter, just as this Court did, without the threat of ongoing enforcement proceedings.

## BACKGROUND

CCP is a nonprofit corporation organized under § 501(c)(3) of the Internal Revenue Code. Its mission is to promote and defend the First Amendment rights of free political speech, association, assembly, and petition. It furthers these aims through research, education, and strategic litigation. CCP's mission is financially supported by contributors from across the United States, including the State of California.

CCP filed suit in federal district court to enjoin Defendant-Appellee Kamala Harris, the Attorney General of California, from requiring the filing with her office of an unredacted copy of CCP's Form 990, Schedule B, which lists the names and addresses of CCP's major contributors, as a condition of soliciting contributions in California.

---

to stay issuance of the mandate in this case, but (2) does oppose the entry of an injunction pending CCP's timely filing of a petition for *certiorari*.

On May 14, 2014, relying principally upon *Brock v. Local 375, Plumbers Int'l Union*, 860 F.2d 346 (9th Cir. 1988) and its progeny, the United States District Court for the Eastern District of California denied CCP's motion for a preliminary injunction on First Amendment grounds. The district court also rejected, citing *Stokwitz v. United States*, 831 F.2d 893 (9th Cir. 1987), CCP's argument that the Attorney General's demand was preempted by 26 U.S.C. § 6104.

CCP timely appealed, and on May 29, 2014, the district court stayed its proceedings.

This Court heard oral argument on December 8, 2014. Three days later, the Attorney General sent a letter demanding that CCP turn over its donors within 30 days or face significant sanctions. On December 18, 2014, citing the irreparable harm this demand posed, CCP requested an injunction pending appeal. This Court granted that injunction on January 6, 2014.

On May 1, 2015, this Court issued an opinion affirming the ruling of the district court. The same day, this Court also vacated its injunction pending appeal.

**LEGAL STANDARD**

Under Federal Rule of Appellate Procedure 41(d)(2), "[a] party may move to stay the mandate pending the filing of a petition for a writ of *certiorari* in the Supreme Court…[but the party] must show that the *certiorari* petition would present a substantial question and that there is good cause for a stay."

3

In this Circuit, "a party seeking a stay of the mandate following this court's judgment need not demonstrate that exceptional circumstances justify a stay," although such petitions are not "granted as a matter of course." *United States v. Pete*, 525 F.3d 844, 851 n. 9 (9th Cir. 2008) (quoting *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528-1529 (9th Cir. 1989); 9TH CIR. R. 41-1. Consequently, it "is often the case" that a stay is granted. *Pete*, 525 U.S. at 851; *see also Campbell v. Wood*, 20 F.3d 1050, 1051 (9th Cir. 1994) (Poole, J. dissenting) (observing that the Ninth Circuit "commonly stay[s] our mandate pending application for a writ of *certiorari*…"). Thus, a stay is generally merited, although it "will be denied if the Court determines that the petition for certiorari would be frivolous or filed merely for delay." 9TH CIR. R. 41-1. As CCP's Petition falls into neither category, a stay ought to issue.

Similarly, CCP requests that this Court renew its injunction issued on January 6, 2015. Otherwise, CCP will be immediately threatened with precisely the irreparable harm that necessitated that injunction in the first place: significant, concrete penalties and sanctions upon CCP and its officers if it does not submit to the Attorney General's demand for donor information.

I. **The Ninth Circuit's Opinion Announces a Novel, Important, and in Appellant's View, Flawed Approach to Exacting Scrutiny**

CCP acknowledges that the Court, as it always does under these circumstances, disagrees with the movant's legal views. The question here,

4

however, is not whether CCP's arguments are correct, but whether they might support a non-frivolous petition for *certiorari.*

In that vein, the U.S. Supreme Court has advised that when "a United States court of appeals has decided an important question of federal law that has not been, but should be, settled by th[e] Court, or has decided an important federal question in a way that conflicts with relevant decisions of" the Supreme Court, it will consider a petition for a writ of *certiorari*. S. CT. RULE 10(c).

This case presents a question of the highest importance. While it has been understood since *NAACP v. Alabama* that all Americans enjoy a right to "pursue their lawful private interests privately and to associate freely with others in so doing," this case concerns the scope of that right. 357 U.S. 449, 466 (1958). Is it a fundamental liberty, the invasion of which can only be permitted where the State carries its burden and specifically justifies the intrusion? Or is it merely contingent, available to groups that have been concretely harmed in the past, or who have been specifically targeted by state action, with the burden falling on the group to justify its donors' privacy?

Here, the Court of Appeals agreed that the Attorney General's actions must be reviewed under exacting scrutiny, the "strict test established by *NAACP v. Alabama*." *Buckley v. Valeo*, 424 U.S. 1, 66 (1976); Op. at 8. But in applying that standard, this Court did not require the State to prove its need for compelled donor

disclosure or bear the burden of demonstrating that its demand was appropriately tailored to a sufficiently important governmental interest. Rather, viewing exacting scrutiny as merely a "balancing test," it required *CCP* to prove an "actual burden," and in the absence of particularized and provable harm, permitted the State to prevail because it "asserted" a reason "for the disclosure requirement…[that is] not wholly without rationality." Op. at 9, 12, 19 (citations omitted).[2]

In CCP's view, this approach raises two issues concerning the application of exacting scrutiny, and should be reviewed by the Supreme Court.

First, this approach shifts the burden of proof, and resembles rational basis review far more than the exacting scrutiny traditionally required in civil rights cases. *Elrod v. Burns*, 427 U.S. 347, 362 (1963) ("[I]t is not enough that means chosen in furtherance of the interest be rationally related to that end"). By requiring organizations challenging state demands for donor lists to prove an "actual burden," and specifically denying that "compelled disclosure *itself*" constitutes such an injury, this Court has, in practice, switched the burden of persuasion in compelled disclosure cases. Op. at 12 (emphasis in opinion); *cf.*

---

[2] Alternatively, this Court would find that the Attorney General has exceeded her authority where (1) there is a record of harassment against the organization threatened with disclosure, or (2) when the disclosure regime is pretextual and intended only to harass. Op. at 9-12 (discussing the *NAACP* line of cases, as well as *Acorn Invs., Inc. v. City of Seattle*, 887 F.2d 219 (9th Cir. 1989)). In both cases, of course, the burden of persuasion would again fall upon the plaintiff.

6

*Perry v. Schwarzenegger*, 591 F.3d 1126, 1139 (9th Cir. 2010) (quoting *AFL-CIO v. FEC*, 333 F.3d 168, 175 (D.C. Cir. 2003) ("compelled disclosure, *in itself*, can seriously infringe on privacy of association and belief guaranteed by the First Amendment") (emphasis supplied). In fact, this Court did not find that the Attorney General's disclosure regime passed exacting scrutiny, but rather that "CCP's First Amendment facial challenge…fail[ed]" that test. Op. at 20. CCP is aware of no case where a Plaintiff, and not the State, was held to that standard. *Cf. Elrod v. Burns,* 427 U.S. at 362-63 ("[t]he interest advanced must be paramount, one of vital importance, and the burden is on the government to show the existence of such an interest…Moreover…[t]he gain to the subordinating interest provided by the means" used to further that interest "must outweigh the incurred loss of protected rights").

Second, this Court found that the "disclosure requirement bore a 'substantial relation' to the 'sufficiently important' government interest of law enforcement." Leaving aside whether a generalized claim of a "law enforcement" interest is sufficiently specific, the record upon which the Court made this determination was remarkably thin. Pl.-App. Br. at 16-17 (noting that "the Attorney General has provided no particularized rationale for obtaining CCP's donor information") (citation omitted); Pl.-App. Reply Br. at 21-24 ("At last, in her brief on appeal, the Attorney General first offer[s] some explanation…"); Pl.-App. Reply to Def.

Opp'n to Urgent Mot. 2-3 (discussing and responding to the Attorney General's sole representation, made at oral argument, as to how donor information serves her law enforcement interest).

Having failed to provide any particularized evidence, or even explanation, of her need for this information, the Attorney General attempted to cure that defect at oral argument on appeal. Op. at 6 ("At oral argument, counsel elaborated and provided an example of how the Attorney General uses Form 990 Schedule B in order to enforce these laws…"). That example may be a hypothetical, or it may be based on actual events. It is impossible to know because it was merely a representation by counsel, untested by discovery or cross-examination, and— because of its timing—not susceptible to detailed rebuttal.

Whether the State should have been permitted to cure its lack of a record in this manner is an open question. But even if counsel's statement is taken as a factual showing, it is insufficient to meet exacting scrutiny. This Court found that the State had shown its "investigative efficiency" to be improved by its dragnet demand for all donors, rather than by issuing subpoenas when audits or other information available on Form 990 (a highly-detailed view of an organization's finances, including the amounts of contributions and whether each was a non-cash contribution, if not the names of contributors) suggested that information would be

useful.[3] Op. at 7. The Attorney General, however, merely asserted such an interest; she did not prove it. In any event, mere efficiency is not sufficient to carry a government's First Amendment burden—any number of law enforcement interests would be advanced by setting aside constitutional rights. *McCullen v. Coakley*, 134 S. Ct. 2518, 2534 (2014) ("[B]y demanding a close fit between ends and means, the tailoring requirement prevents the government from too readily sacrificing speech for efficiency") (citation and quotation marks omitted).

Taken together, this Court's approach to exacting scrutiny is novel, and in Appellant's view, conflicts with binding precedent of the Supreme Court. *Buckley*, 424 U.S. at 64 ("We long have recognized that significant encroachments on First Amendment rights of the sort that compelled disclosure imposes cannot be justified by a mere showing of some legitimate government interest"). Exacting scrutiny is premised upon the belief that governments must justify their demands for disclosure, not force the governed to explain why the government's accumulation of a vast database of private, constitutionally-protected information is harmless. *Buckley*, 424 U.S. at 66 ("Since *NAACP v. Alabama* we have required that the *subordinating interests* of the State must survive exacting scrutiny... Moreover, the

---

[3] For instance, the public version of Form 990, Schedule B filed with the Attorney General would already indicate whether a particular contribution was in-kind and its value. This fact was not mentioned by the Attorney General at oral argument, demonstrates that she could easily subpoena the name of the donor responsible for a suspicious in-kind donation, and undermines her need for the names and addresses of all significant donors nationwide.

invasion of privacy of belief may be as great when the information sought concerns the giving and spending of money as when it concerns the joining of organizations, for '[f]inancial transactions can reveal much about a person's activities, associations, and beliefs'") (emphasis supplied) (quoting *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 78-79 (1974) (Powell, J., concurring) (brackets and quotation marks in original). Nor has the Supreme Court stated that only groups that have *already* experienced some sort of harm may be protected from compelled disclosure. After all, once a database is assembled, it will not simply dissipate if changes in security or public mores prompt a *future* injury. This is why the default position is against compelled disclosure, and why the State bears the burden of justifying its intrusion.

Similarly, this Court's rejection of CCP's preemption arguments rests primarily on its interpretation of 26 U.S.C. § *6104,* as informed by a case from 1987 applying 26 U.S.C. § *6103*. *Stokwitz v. United States*, 831 F.2d 893 (9th Cir. 1987); Op. at 23. ("While CCP is correct that Congress added § 6104 thirty years after § 6103, and that, therefore, Congress's intent may have differed, our opinion in *Stokwitz* is nevertheless instructive…") Given that CCP's case is the first to raise the preemption ramifications of 26 U.S.C. § 6104, which, as discussed *supra*, involves important state policies affecting the associational liberties of thousands

of organizations, CCP's Supremacy Clause arguments will also likely merit *certiorari*.

Moreover, this is an issue of national importance. Quite aside from the large portion of the United States subject to this Court's jurisdiction, California is not alone in its practice of demanding donor information from nonprofit corporations. The Attorney General of New York has followed in Defendant's footsteps, and has demanded the donor lists of an unknown number of nonprofit corporations. These demands are also the subject of litigation. *Citizens United*, et al. *v. Scheinderman*, No. 1:14-cv-3703 (S.D.N.Y. May 22, 2014). Other state governments will doubtless follow the lead of California and New York, which constitute an extraordinary share of the wealth, charitable giving, and general population of the United States. Given these demands' significant ramifications for privacy of association and belief, and to private charitable giving in the United States, and this Court's dramatic grant of governmental discretion in making such demands, it is likely that the Supreme Court will wish to decide this important question now, rather than later—after thousands of Americans' private giving habits have been revealed to elected government officials and possibly to the general public.[4]

---

[4] While this Court considered it unlikely that information provided to the Attorney General would find its way into general circulation, it did not prohibit such disclosure, and both CCP and *amici* raised specific concerns regarding the State's privacy guarantees. Op. at 18, n. 9 ("Thus, it appears *doubtful* that the Attorney General would ever be required to make Form 990 Schedule B publicly available)

## II. There is Good Cause for a Stay and Injunction

Thus, given the consequential matters at hand, CCP's pending petition for *certiorari* is neither frivolous nor a waste of time. Under this Court's rules, the stay should issue.

But merely imposing a stay of the mandate is not enough. This Court issued an injunction to protect its ability to consider this important case, and the Supreme Court should be afforded the same opportunity.

The Attorney General's demand has placed CCP is an impossible position. On one hand, and as the Supreme Court reiterated just last week, the solicitation of charitable contributions is speech fully protected by the First Amendment, limitations on which are subject to strict scrutiny. *Williams-Yulee v. The Florida Bar*, No. 13-1499, 2015 U.S. LEXIS 2983 at *15-16 (Roberts, C.J., controlling opinion) ("demanding" review is required because "restricting the solicitation of contributions to charity…threatens the exercise of rights so vital to the maintenance of democratic institutions"); *Riley v. Nat'l Fed. of the Blind*, 487 U.S

---

(emphasis supplied); Pl.-App. Br. at 6 "…the Attorney General professes to maintain confidentiality procedures akin to those of the IRS, but insists that no law requires her to do so…"); Watkins *Amicus* Br. at 2, n. 1 (noting the risk of "potential inadvertent or intentional disclosure or misuse of those donors' information by state employees"); Nat'l Org. for Marriage *Amicus* Br. at 5 ("Yet California has provided no safeguards to deter or prevent such inadvertent or willful disclosure nor has it provided a cause of action in which to find relief in the event such disclosure occurs").

781, 798 (1988); Pl. Mot. for Prelim. Inj. at 14, *Center for Competitive Politics v. Harris*, No. 14-636 (Dkt. 9-1) (E.D. Cal. 2014) ("And as the Ninth Circuit Court of Appeals reiterated, 'the Supreme Court has held that fund-raising for charitable organizations is fully protected speech'") (quoting *Gaudiya Vaishnava Soc. v. San Francisco*, 952 F.2d 1059, 1063 (9th Cir. 1991)). It is uncontested that this is the activity the Attorney General will ban unless CCP complies with her demand.

On the other hand, CCP is being required to turn over its significant donors, a constitutionally disfavored demand subject to exacting scrutiny. While this Court has ruled that the Attorney General may constitutionally take this action, the Supreme Court may disagree. But once CCP donor information is delivered to the Attorney General, the genie is out of the bottle. As this Court has observed, in the context of disclosing sensitive information, "this injury will not be remediable." *Perry*, 591 F.3d at 1137.

Given that important constitutional harms are present, or at least potentially present, regardless of CCP's actions, an injunction should issue. The Attorney General should not be permitted to impose a concrete or potential constitutional harm until the Supreme Court has an opportunity to consider CCP's Petition.

## CONCLUSION

CCP will present a substantial question to the Supreme Court, and is not seeking a writ of *certiorari* frivolously or to cause delay. Moreover, the

preliminary injunctive relief issued by this Court on January 6th ought to remain in place while CCP pursues Supreme Court review. *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 828 (9th Cir. 2013) (First Amendment injuries, even for "'minimal periods of time, unquestionably constitute[] irreparable injury'") (quoting *Elrod*, 427 U.S. at 373). Accordingly, this Court should grant this Motion to Stay the Mandate and for Preliminary Injunctive Relief Pending Filing of a Petition for a Writ of *Certiorari*.

Respectfully Submitted,

s/ Allen Dickerson

| | |
|---|---|
| Alan Gura, Calif. Bar No. 178,221 | Allen Dickerson |
| Gura & Possessky, PLLC | Center for Competitive Politics |
| 105 Oronoco Street, Suite 305 | 124 S. West St., Suite 201 |
| Alexandria, VA 22314 | Alexandria, VA 22314 |
| Telephone: (703) 835-9085 | Telephone: (703) 894-6800 |
| Facsimile: (703) 997-7665 | Facsimile: (703) 894-6811 |
| alan@gurapossessky.com | adickerson@campaignfreedom.org |

Date: May 5, 2015

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CENTER FOR COMPETITIVE POLITICS, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> KAMALA D. HARRIS, in her official capacity as Attorney General of the State of California, <br><br> Defendant-Appellee. | C.A. No. 14-15978 |

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on May 5, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

                                                                        s/ Allen Dickerson
Allen Dickerson
Center for Competitive Politics
124 S. West St., Suite 201
Alexandria, VA 22314
Phone: (703) 894-6800
Fax: (703) 894-6811
adickerson@campaignfreedom.org

*Counsel for Plaintiff-Appellant*